UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

MATTHEW ZEKANOVIC,

                              Plaintiff,

        -against-

AUGIE'S PRIME CUT OF                              Civ. No.:  1:19-cv-08216 (KMK)(JCM)
WESTCHESTER, INC., ET AL.,

                              Defendants.

------------------------------------------------------------x

## NEGOTIATED SETTLEMENT AGREEMENT

WHEREAS, Plaintiff Matthew Zekanovic and Defendants, Augie's Prime Cut of

Westchester, Inc., Salvatore Barone, and Audrey Hochroth, (collectively "Defendants") desire to

resolve, settle and agree to the dismissal with prejudice of all claims and all issues raised in or by

Plaintiff's Complaint without further litigation or adjudication, and to preclude all further or

additional claims which Plaintiff (including, but not limited to, any present or former spouses,

dependents, heirs, counsel, executors, successors, agents, assigns or representatives of Plaintiff,

referred to collectively herein as "Plaintiff") has made or could make against the Defendants;

WHEREAS, Plaintiff and Defendants understand and agree that Defendants (which

includes any present or former parent corporation[s], co-employers, subsidiaries, divisions,

affiliated entities, acquiring entities, purchasers of assets or stock, investors, joint ventures,

shareholders, successors, counsel, reinsurers, insurers, assigns, administrators, executors, officers,

partners, board members, directors, agents, representatives or employees thereof, collectively

referred to throughout this Agreement as "Defendants" unless otherwise provided herein) denies

each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings, and in any other document or statement whatsoever;

WHEREAS, Plaintiff and Defendants understand and agree that neither the making of this Negotiated Settlement Agreement (hereinafter referred to as the "Agreement") and the General Release attached hereto as Exhibit A, nor anything contained herein, shall be construed or considered in any way to be an admission by Defendants of guilt or noncompliance with any federal, state, or local statute, law, order, regulation or ordinance, public policy, tort (whether intentional, negligent or otherwise), contract (whether oral or written, express or implied), common law, policies, practices or procedures or of any other wrongdoing whatsoever; and,

WHEREAS, this action shall be dismissed in its entirety and with prejudice subject to the terms of Plaintiff's and Defendants' stipulation:

NOW, THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES that:

1. **Plaintiff's Commitments**:  In exchange for the promises made by Defendant in Paragraph "2" below, Plaintiff agrees as follows:

A. Execution of Documents:

(I) Plaintiff will execute, or cause to be executed by his attorneys, all documents and all supplemental, further or modifying documents, including, but not limited to the Stipulation of Final Dismissal with Prejudice, needed to settle, dismiss and withdraw with prejudice the captioned action filed in the United States District Court, Southern District of New York, Case No. 19-cv-08216 (KMK)(JCM) (referred to herein as the "Lawsuit").

(II) Plaintiff shall execute and deliver to Defendants a General Release in the form attached hereto as Exhibit "A" and shall cause to be executed by his attorneys

a Stipulation of Final Dismissal with Prejudice attached hereto as Exhibit "B." Based upon such documents, the Stipulation of Final Dismissal with Prejudice shall be entered herein and in any other proceeding upon presentation hereof by Defendants or by any other entity to any court of competent jurisdiction, agency, arbitration or other forum upon any claim made by, relating to or on behalf of Plaintiff.

(III) Plaintiff affirms that he has not filed, caused to be filed, or presently is a party to any claim, complaint, or action against Defendants in any court, agency or other forum other than the Lawsuit. In the event that, for any reason, any complaint, suit, action, charge, claim or proceeding relative to any allegation or cause of action alleged in the Lawsuit is not wholly or finally dismissed, Plaintiff shall authorize his attorneys of record herein to immediately take all actions needed to obtain dismissal thereof and to provide proof of any such dismissal to Defendant's legal counsel; Plaintiff shall not obtain or accept any recovery or relief from any such proceeding; and Plaintiff shall reimburse Defendants for the legal fees and costs incurred in defending any action or proceeding caused or permitted by Plaintiff to be brought on or before the effective date of this Agreement (other than with respect to the instant action).

B. <u>Bifurcated Release of Claims</u>:

(I) In consideration for the full Settlement Amount, Plaintiff is providing the Defendants with two separate releases. The Settlement Amount is being divided equally between resolving claims specifically brought in the complaint and limited to the FLSA and NYLL, and all other claims that could have been asserted, for which a general release is being provided.

(I) **FLSA Release**.   In consideration for $17,500, Plaintiff knowingly and voluntarily releases and forever discharges Defendants of and from any allegation or cause of action arising under the Fair Labor Standards Act.

(III) **New York Labor Law Release of Claims**. In consideration for $17,500.00, Plaintiff knowingly and voluntarily releases and forever discharges Defendants of and from any allegation or cause of action not alleged in the Lawsuit, or which could have been alleged in the Lawsuit, including, but not limited to, any claims for retaliation, in accordance with the accompanying General Release attached hereto as Exhibit "A."

(V) Except to enforce the terms of this Agreement, Plaintiff shall not institute, be represented in, participate in or permit to be submitted or filed on Plaintiff's behalf any claim arising from the allegations in the Lawsuit prior to the execution of this Agreement whatsoever, whether in an individual, class or other action, before any administrative agency, court, or other forum or accept any relief or recovery from or against Defendants. In the event any class or collective action is brought against Defendants that includes or may include Plaintiff, Plaintiff immediately shall withdraw therefrom without obtaining or accepting any relief or recovery upon learning of Plaintiff's inclusion or will be in breach hereof.

C.     <u>Non-Disparagement</u>: Plaintiff agrees that he will not take any action including without limitation the making of any oral or written statement, which damages, disparages, or otherwise diminishes the reputation and/or services of Defendants, or make or solicit any comments, statements or the like to the media or to others that are derogatory or detrimental to them or their name, except as to truthful statements regarding the Lawsuit. Defendants will not take any action which disparages Plaintiff or make or solicit any comments, statements or the like to the media or to others that are derogatory or detrimental to him or his name, except as to truthful

statements regarding the Lawsuit, and will not directly or indirectly solicit or refer others to bring actions against the Defendants.

D. <u>Employment Verification</u>: To the extent Plaintiff requires any employment reference or verification, Plaintiff agrees to direct all inquiries to Audey Hochroth. In response to any such inquiries, Mrs. Hochroth or her designee will only provide a neutral reference relating to the dates of Plaintiff's employment and positions held.

2. <u>**Voluntary Resignation And No Re-Employment**</u>: Plaintiff acknowledges and agrees that his employment with Defendant ended in June of 2019. Plaintiff acknowledges that because of circumstances unique to him, he does not wish to hold any position with Defendants or any affiliated entities now or in the future and, therefore, shall not apply in the future for employment with any entity owned or operated by Defendants or any affiliated entities. In the event Plaintiff applies to an entity owned or operated by Defendants or any affiliated entities, Plaintiff acknowledges that Defendants or the affiliated entity may deny employment and Plaintiff waives any claim with regard to such denial. However, in the event Plaintiff is employed by an entity that is acquired by the Defendants as a result of a sale or merger, or becomes associated with Defendants in any other manner, Plaintiff shall not be terminated for this reason alone.

3. <u>**Consideration**</u>: In exchange for the promises made herein by Plaintiff, including the general and unlimited release of all claims against Defendants as set forth in the General Release annexed hereto as Exhibit A, Defendants agrees to pay to Plaintiff the total settlement sum of Thirty Five Thousand Dollars and No Cents ($35,000.00), referred to as the "Settlement Amount".

A. Defendants will pay the Settlement Amount within thirty (30) days of Defendants' counsel's receipt of a executed originals of this Agreement that has not been revoked

by Plaintiff and the General Release attached hereto as Exhibit "A" executed by Plaintiff, Court approval of this settlement, and the Stipulation attached hereto as Exhibit "B" executed by Plaintiff's counsel, as follows:

(I) The gross sum of TEleven Thousand Four Hundred Sixty-Six Dollars and Sixty-Seven Cents ($11,466.67), less applicable taxes, representing payments for any and all alleged monetary or economic damages. Defendants shall issue Plaintiff and IRS Form W-2 with respect to this payment;

(II) The gross sum of Eleven Thousand Four Hundred Sixty Six Dollars and Sixty-Six Cents ($11,466,66), representing payments for any and all liquidated damages. Defendants shall issue Plaintiff and IRS Form 1099 with respect to this payment;

(III) The sum of Twelve Thousand Sixty-Six Dollars and Sixty-Seven Cents ($12,066.67), as and for attorneys' fees and costs, payable to the order of "El-Hag & Associates, P.C." for which an IRS Form 1099 will be issued to "El-Hag & Associates, P.C." as Plaintiff's counsel;

B. The Settlement Amount is paid as and for consideration for the Plaintiff's releases of claims as set forth in Paragraph 1(B); and,

C. Default. Time is of the essence concerning the Defendants' obligation to pay the Settlement Amount. If the Defendants fail to timely pay the Settlement Amount, then this Agreement shall become null and void having no further effect, as if this Agreement was never created. In such case, the Plaintiff shall have the right to reinstate the lawsuit (1:19-cv-08216 (KMK)(JCM)) and continue litigation. The Court shall retain jurisdiction over this matter until the Settlement Amount is paid. The Defendants agree to toll any applicable statutes of limitations until the Settlement Amount is paid in full.

6

D. In the event that any federal, state and local taxing authority or court determines that taxes, interest, penalties or other monies are due by Plaintiff as a result of the payment of the Settlement Amount, said taxes, interest, penalties or other monies shall be the sole obligation and liability of Plaintiff, who agrees to hold harmless and to indemnify Defendants from any tax-related or other liability, including interest and penalties associated with Plaintiff's failure to pay any income taxes on the Settlement Amount. In this connection, Defendants and Plaintiff expressly agree that should any taxing authority request information concerning any payments made to Plaintiff under this Agreement or render any assessment, decision, ruling or order concerning payments under this Agreement, the Party receiving such request, assessment, decision, ruling or order will notify the other Party to this Agreement prior to responding to, and within five (5) calendar days of the receipt of such request assessment, decision, ruling or order.

Notwithstanding the foregoing, Plaintiff shall not be responsible for any employer payroll taxes or other related taxes that are normally borne by employer. Additionally, Plaintiff shall only be required to indemnify the Defendants for any tax liability for which Plaintiff is found to be required to pay and that the Defendants paid on his behalf. And, Plaintiff shall only be required to indemnify the Defendants if he refuses to cooperate in any investigation or proceeding that is being conducted by a taxing authority such as the Internal Revenue Service or the New York State Department of Taxation and Finance, such that his failure to cooperate causes the Defendants to incur unnecessary costs and expenses associated with any such investigation or proceeding.

### 4. <u>Affirmations</u>:

A. <u>Other Claims</u>:  Other than in the instant action, Plaintiff has not filed, or caused to be filed, and presently is not a party to any claim, complaint, or action that is currently pending against Defendants in any forum.  Plaintiff further affirms that, upon the payment of the consideration herein, he has been paid or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and confirms that no other leave (paid or unpaid), compensation, wages, bonuses, commissions or benefits are due to him except as provided in this Agreement, (and waives and releases any claims thereto).  Plaintiff further affirms he has no known workplace injuries or occupational diseases.

B. <u>Medicare and/or Medicaid</u>:  Plaintiff affirms that his claims against Defendants do not involve any injury, illness, incident or accident in which medical expenses were, or are expected to be, incurred.  Accordingly, Plaintiff affirms that Medicare has no interest in the monetary consideration paid to Plaintiff under this Agreement.  Plaintiff also affirms that, as of the date he has executed this Agreement, no conditional payments have been made to him by Medicare.  Plaintiff agrees to indemnify and hold Defendants and their insurers harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed by the Centers for Medicare and Medicaid Services ("CMS") for any Medicare reimbursement obligation that may arise from the monetary consideration paid to Plaintiff under this Agreement.  Plaintiff further agrees to: (i) reasonably cooperate with Defendants and their insurers upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Plaintiff is required to indemnify Defendants under this paragraph, and (ii) waives any and all future actions against Defendants and their

insurers for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).
Plaintiff further represents that no Medicaid payments have been made to or on behalf of Plaintiff
arising from or related to any of the allegations set forth in this Lawsuit, and that no liens, claims,
demands, subrogated interests, or causes of action of any nature or character exist or have been
asserted arising from or related to any such claims. Plaintiff further agrees that he shall be
responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action
that may exist or have been asserted or that may in the future exist or be asserted.

   C. Execution: The terms of this Agreement are the product of mutual
negotiation and compromise between Plaintiff and Defendants, and is deemed to have been
mutually drafted by Plaintiff's and Defendants' counsel. The meaning, effect and terms of this
Agreement have been fully explained to Plaintiff by his counsel. Based upon advice of counsel
and his own understanding, Plaintiff hereby confirms that he fully understands that this Agreement
settles, bars and waives any and all allegations and causes of actions alleged in the Lawsuit against
Defendants as of the date of the execution of the Agreement.

   D. Defendants represent that they have consulted with their accountant
and/or other professional advisors concerning the wages paid to Plaintiff and the reporting thereof.
And based on their professional advice, the Defendants have formed a good faith belief that
Plaintiff has been paid properly paid throughout his tenure of employment with Defendants and
that the Defendants properly reported Plaintiff's earnings during such time. Defendants further
represent that no edits amendments, or other modifications concerning the reporting of Plaintiff's
earnings is necessary or required. This representation is a materially inducement to Plaintiff
entering into this Agreement.

5. **<u>Non-Admission of Wrongdoing</u>**.  Plaintiff and Defendants agree that neither this Agreement nor the furnishing of the consideration provided for herein shall be deemed or construed, at any time or for any purpose, as an admission by either party of any liability or unlawful conduct of any kind.

6. **<u>Fees, Costs and Disbursements</u>**.  Each party shall bear its own attorneys' fees, costs and disbursements, except as otherwise stated in Paragraph "2."

7. **<u>Section Headings</u>**:  Section headings are used herein for convenience of reference only and do not affect the meaning of any provision of this Agreement.

8. **<u>Entire Agreement</u>**:  This Agreement (which incorporates as covenants the representations and clauses in the introductory "Whereas" clauses) and the attached General Release, represents the complete understanding between Plaintiff and Defendants. No other promises or agreements shall be binding or shall modify this Agreement. This Agreement can be modified only by a written document, signed by Plaintiff and by Defendants or their respective legally designated representatives, which recites the specific intent to modify this Agreement. This Agreement and the attached General Release are made in New York and shall be interpreted under the laws of said State.  The language shall be construed as a whole according to its fair meaning and not strictly for or against any of the parties.  The Parties expressly consent that any action or proceeding relating to the enforcement of this Agreement and/or to the enforcement of the General Release attached hereto as **Exhibit A** will only be brought in a court located in the State of New York, in the County of Westchester,.  The Parties expressly waive their right to bring any such action or proceeding in any other jurisdiction. Should any provision of this Agreement and/or the General Release be declared illegal or unenforceable by any court of competent jurisdiction, and such provision cannot be modified to be enforceable, excluding the general release language, such

provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.   However, if any portion of the General Release language is ruled to be unenforceable for any reason by a court of competent jurisdiction in an action commenced by Plaintiff or by any other person on behalf of Plaintiff, then Plaintiff shall take all reasonable steps to execute a modified release that provides the Defendants with the broadest release of claims permitted by law, but only for claims arising prior to the execution date of this Agreement.

      **9. <u>Capability to Waive Claims</u>**:   Plaintiff expressly represents that he is able to affect a knowing and voluntary waiver and general release of all claims, as contained herein and in the attached General Release, and to enter into this Agreement and is not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired.   Plaintiff is competent to execute this Agreement and to waive any and all claims against Defendants alleged in the Lawsuit.   Plaintiff certifies that he is not a party to any bankruptcy, lien, creditor-debtor or other proceeding which would impair his right to settle this case and to waive all claims he has against Defendant alleged in the Lawsuit.

      **10. <u>Counterparts</u>**.   This Agreement may be executed in counterparts, each of which shall be deemed an original and each of which shall together constitute one and the same agreement.   This Agreement will not become enforceable until executed by Plaintiff and Defendants, delivered to all parties, and approved by the Court.   A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, including but not limited to .PDF electronic versions transmitted via email, shall have the same effect as the original signature.

**Plaintiff is not over 40 so there is no age discrimination claims. This is unnecessary language.** The parties knowingly and voluntarily sign this Negotiated Settlement Agreement as of the date(s) set forth below:

Dated: _06/29/2020_, 2020   By: _____
MATTHEW ZEKANOVIC, Plaintiff

Dated: _7/21/2020_, 2020   By: _____
AUGIE'S PRIME CUT OF WESTCHESTER, INC.,
Defendant, by: Salvatore Barone, Pres.

Dated: _7/21/2020_, 2020 By: _____
SALVATORE BARONE, Defendant

Dated: _7/21/2020_, 2020 By: _____
AUDREY HOCHROTH, Defendant

12

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

**MATTHEW ZEKANOVIC,**

Plaintiff,

-against-

**AUGIE'S PRIME CUT OF**
**WESTCHESTER, INC. ET AL.,**

Civ. No.: 1:19-cv-08612 (KMK)(JCM)

Defendants.

------------------------------------------------------------x

## <u>GENERAL RELEASE</u>

MATTHEW ZEKANOVIC, as "RELEASOR," for and in consideration of the monies paid to him, and other good and valuable consideration by or on behalf of Defendants, Augie's Prime Cut of Westchester, Inc., Salvatore Barone, and Audrey Hochroth, its/their current and former parent corporations, co-employers, affiliates, subsidiaries, divisions, successors and assigns, and their present or former parent corporations, affiliates, subsidiaries, divisions, successors and assigns, (hereinafter "RELEASED ENTITIES"), and the Released Entities' current and former officers, executives, directors, board members, employees, shareholders, representatives, administrators, fiduciaries, agents, attorneys, insurers, reinsurers, employee benefit programs (and the trustees, administrators, fiduciaries and insurers of any such programs), collectively referred to as "RELEASEES," as set forth in the Negotiated Settlement Agreement resolving the above captioned action, releases and forever discharges the RELEASEES from all allegations and claims stated in the Complaint in the above-captioned matter, including but not limited to any claim for emotional distress or physical injury, or any claim for costs, fees, or other expenses including attorneys' fees incurred in this matter or any other action based upon any conduct occurring up to and including the date of the execution of this General Release, including

any matter or claims which Plaintiff has, had or could have had against the Defendants, including claims for retaliation, from the beginning of the world to the date of this General Release, except as may be expressly provided for in the Negotiated Settlement Agreement. However, nothing in this GENERAL RELEASE will prohibit RELEASOR from instituting legal proceedings to enforce the terms of the Parties' Negotiated Settlement Agreement. RELEASOR understands this General Release includes, but is not necessarily limited to, all claims stated, or which could have been stated, in the Complaint related to RELEASOR's employment or the cessation of that employment with Defendant;

RELEASOR hereby confirms that he has been afforded up to twenty-one (21) calendar days to consider the Parties' Negotiated Settlement Agreement and this General Release, and has been advised in writing to consult with an attorney of RELEASOR'S choosing prior to executing the Negotiated Settlement Agreement and this General Release. RELEASOR may revoke the accompanying Settlement Agreement and this General Release for a period of seven (7) calendar days following the day RELEASOR signs the accompanying Settlement Agreement and this General Release. Any revocation within this period must be submitted, in writing to Jaazaniah Asahguii, Esq., c/o Gaines, Novick, Ponzini, Cossu & Venditti, LLP, and state, "I hereby revoke my acceptance of our agreement and general release." This revocation must be personally delivered to James Lee, Esq. or his designee, or mailed to Jaazaniah Asahguii, Esq., Gaines, Novick, Ponzini, Cossu & Venditti, LLP, 1133 Westchester Avenue, Suite N202, White Plains, New York 10604 and postmarked within seven (7) calendar days after the day RELEASOR sign this General Release and the accompanying Settlement Agreement.

RELEASOR agrees that any modifications, material or otherwise, made to this General Release or the accompanying Settlement Agreement, do not restart or affect in any manner

the original up to twenty-one (21) calendar day consideration period.

Having elected to execute the Negotiated Settlement Agreement and this General Release, to fulfill the promises set forth herein which pertain to RELEASOR, and to receive thereby the consideration set forth therein, RELEASOR freely and knowingly, and after due consideration and consultation with his counsel, voluntarily enters into this General Release, intending to waive, settle and release any and all claims RELEASOR has against the RELEASEES alleged in the Complaint, or could have against RELEASEES.

This GENERAL RELEASE may only be changed by the mutual written agreement of the RELEASOR and the RELEASEES.

IN WITNESS WHEREOF, the RELEASOR has hereunto set his hand and seal on this __1st__ day of __July__, 2020.

Matthew Zekanovic

STATE OF NEW YORK        )
                                          Putnam             ) ss
COUNTY OF ~~WESTCHESTER~~        )

On __July 1st__, 2020, before me, the undersigned, personally appeared MATTHEW ZEKANOVIC, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument

GARY KIERNAN
Notary Public, State of New York
Registration #01KI6222608
Qualified in Notary Public County
Commis...

NYSDC 192-193 058

3