UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MATTHEW ZEKANOVIC,

                Plaintiff,

    v.

AUGIES PRIME CUT OF WESTCHESTER, INC., *et al.*,

                Defendants.

No. 19-CV-8216 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

On September 4, 2019, Plaintiff Mathew Zekanovic ("Plaintiff") brought this Action against Augies Prime Cut of Westchester, Inc. ("Augies"), Audrey Hochroth ("Hochroth"), and Salvatore Barone ("Barone"; collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, N.Y. Lab. Law ("NYLL") Article 19 § 650 *et seq.*, and Article 19 § 650, *et seq.*, and the provisions of N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2.  (*See* Compl. (Dkt. No. 1).)  Plaintiff now moves for approval of the Parties' proposed settlement (the "Motion").  (Letter from Jordan El-Hag, Esq. to Court (July 31, 2020) ("El-Hag Letter") (Dkt. No. 35).)  For the reasons that follow, the Motion is denied without prejudice.

## I.  Background

According to the Complaint, Plaintiff was employed as a bartender and server in Defendants' bar.  (Compl. 1.)  Plaintiff alleges that Defendants failed to keep accurate payroll and time records, and as a result, did not record Plaintiff's daily work start and end times, and were unable to determine the weekly pay and hours worked by Plaintiff.  (*Id.* ¶¶ 27–28.)  As a result, Plaintiff was "paid less than the New York State and Federal Tipped minimum wage for

each work hour," and less than the "direct hourly wage" permitted by the FLSA and NYLL.  (*Id.* ¶¶ 44, 47–48, 51.)  Defendants also failed to pay Plaintiff for all hours worked, as Plaintiff was not compensated for hours worked over 40 in 2019 with an "overtime premium."  (*Id.* ¶¶ 52, 55.)  Moreover, Defendants did not provide Plaintiff with accurate paystubs each week, nor did they provide him with a "written notice of pay rate" that clarified the "tip credit" and pay rates used to compensate Plaintiff.  (*Id.* ¶¶ 60–61.)  Defendants also made unlawful deductions from Plaintiff's paycheck in 2019.  (*Id.* ¶ 62.)

On July 31, 2020, Plaintiff submitted to the Court a proposed settlement agreement (the "Proposed Settlement"), which he requested that the Court approve.  (El-Hag Letter; *id.* Ex. A ("Proposed Settlement") (Dkt No. 35-1).)

## II.  Discussion

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).[1]  Consequently, "the

---

[1] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime

[P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL

---

compensation and' liquidated damages due under the FLSA." *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

3

2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).  Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[2]  To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 176).

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alterations and quotation marks omitted).

Having reviewed the Proposed Settlement, the Court is satisfied that it was negotiated in good faith at arms' length and that there was no fraud or collusion. The Court is also satisfied, based on the Parties' representations, that the settlement will allow the Parties to avoid the anticipated burdens and risks of litigation, and, in particular, the risk of not collecting on a future judgment, as Defendants' restaurant has been closed due to the COVID-19 pandemic. (El-Hag Letter 2.)

However, the Court does not have sufficient information to determine whether the settlement sum is fair and reasonable. The total settlement amount is $35,000 (the "Settlement Amount"). (*Id.* at 1; Proposed Settlement 5.) Plaintiff will receive $22,933.33, while Counsel for Plaintiff seeks $12,066.67 in attorneys' fees and expenses. (El-Hag Letter 1; Proposed Settlement 6.) According to Plaintiff's submission, his "maximum unpaid overtime damage computation" is $19,292.54, which "reflects actual damages and liquidated damages under the FLSA [and] NYLL." (El-Hag Letter 2.) However, Plaintiff does not provide an explanation of the methodology used to calculate this amount, or the underlying data, stating only that "Plaintiff and the Defendants have requested that the underlying calculation of the damages be kept confidential," and representing that $19,292.54 is the "sum total of all unpaid wages and liquidated damages." (*Id.*) The Parties must submit to the Court a more detailed explanation of Plaintiff's potential recovery and the calculation of the Settlement Amount before the Court will approve it. *See Nights of Cabiria*, 96 F. Supp. 3d at 176 ("The parties have not 'provided the [c]ourt with each party's estimate of the number of hours worked or the applicable wage.'" (citation and alteration omitted)); *see also Gaspar*, 2015 WL 7871036, at *2 (noting that although the court was satisfied with the parties' explanation of the methodology used to

generate settlement amounts, the parties failed to submit the "underlying data" to which the methodology was applied).

The Proposed Settlement is also "bifurcated," and sets forth two releases—one for the release of FLSA claims (the "FLSA Release"), and the other for release of all other claims (the "NYLL Release"). (El-Hag Letter 1.) "[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the FLSA Release is "[i]n consideration for $17,500" and provides that "Plaintiff knowingly and voluntarily releases and forever discharges Defendants of and from any allegation or cause of action arising under the [FLSA]." (Proposed Settlement 4.)  This provision is overbroad.  "[A]s written, [the FLSA Release] could potentially extinguish claims under provisions of [the] FLSA . . . 'that have no relationship whatsoever' to the claims at issue in this case."  *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (quoting *Cheeks*, 796 F.3d at 206–07).  As noted, the case law is clear that "any release provision must be limited to the claims at issue in this action."  *Lazaro-Garcia*, 2015 WL 9162701, at *2; *see also Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." (quotation marks omitted)).  While the FLSA Release is limited to causes of action under the FLSA, it is not expressly limited to the conduct underlying the claims in this case.  Although a release "may include claims not presented and even those which could not have been presented," it must still be limited to "conduct [that] arises out of the identical factual predicate as the settled conduct."  *Nights of Cabiria*, 96 F. Supp. at 181; *see also Martinez v. Gulluoglu LLC*, No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("The [c]ourt will not approve a release provision that extends beyond the claims at issue in this action."); *cf. Pucciarelli v. Lakeview Cars, Inc.*, 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims").

Further, the Court is not convinced of the propriety of the NYLL Release.  This Release is also "[i]n consideration for $17,500.00."  (Proposed Settlement 4.)  Under it, Plaintiff

7

"knowingly and voluntarily releases and forever discharges Defendants of and from any allegation or cause of action not alleged in the [l]awsuit, or which could have been alleged in the [l]awsuit, including, but not limited to, any claims for retaliation, in accordance with the accompanying General Release." (*Id.*)  The General Release is extremely broad, and "includes, *but is not necessarily limited to*, all claims stated, or which could have been stated, in the Complaint related to [Plaintiff's] employment or the cessation of that employment with Defendant[s]."  (Proposed Settlement Ex. 1 ("General Release"), at 2 (emphasis added) (Dkt. No. 35-1).)  In advocating for this bifurcated structure, Plaintiff argues that the NYLL Release is permissible under *Cheeks* because it is supported by separate consideration, and notes that "[m]any times, parties bifurcate their settlements to address such matters."  (El-Hag Letter 4.)  However, the cases cited by Plaintiff all involve fully bifurcated settlement agreements, as opposed to bifurcated releases within the same agreement.  *See Ortiz v. Breadroll, LLC*, No. 16-CV-7998, 2017 WL 2079787, at *2 (S.D.N.Y. May 15, 2017) (observing "authority for a bifurcated settlement agreement," in which the parties submit an FLSA agreement for court review and approval, "but enter into a separate . . . settlement agreement with respect to the counterclaims" (collecting cases)); *Yunda v. SAFI-G*, No. 15-CV-8861, 2017 WL 1608898, at *2 (S.D.N.Y. Apr. 28, 2017) (approving the submission of two settlement agreements, one resolving the plaintiff's FLSA claims that required approval under *Cheeks*, and the other resolving the plaintiff's NYLL claims that did not require approval under *Cheeks* and that contained a confidentiality clause); *Abrar v. 7-Eleven, Inc.*, No. 14-CV-6315, 2016 WL 1465360, at *1 (E.D.N.Y. Apr. 14, 2016) (noting that the court approved of a bifurcated settlement structure whereby the parties publicly filed their FLSA settlement agreement and executed a separate, confidential settlement agreement for non-FLSA claims under the NYLL).

Plaintiff has not set forth any authority approving of bifurcated releases *in the same agreement*, a structure which arguably renders the more limited FLSA Release "illusory so long as the [NYLL Release] releases those claims that would be impermissible to release in the FLSA settlement agreement." *Torres v. McGowan Buildings*, No. 18-CV-6099, 2020 WL 5369056, at *2 (E.D.N.Y. Sept. 8, 2020) (citation and footnote omitted); *see also Fisher v. SD Protection, Inc.*, 948 F.3d 593, 607 n.12 (2d Cir. 2020) ("We do not have such a bifurcated settlement before us and thus we do not decide whether the settlement of state law claims paired with FLSA claims requires judicial approval."). Moreover, some courts in the Second Circuit have expressed concern over bifurcated settlements, and Plaintiff does not address this conflicting case law. *See Torres*, 2020 WL 5369056, at *2 (noting that "[w]hether a bifurcated settlement is permissible under *Cheeks* remains an open question," and ultimately rejecting an FLSA settlement that included a more limited release provision where a non-FLSA settlement agreement contained a broad release provision); *Bazile v. Asset Protection Grp. LLC*, No. 18-CV-6820, 2019 WL 7985168, at *3 (E.D.N.Y. Nov. 27, 2019) ("A plaintiff who executes a FLSA settlement containing a limited release, while simultaneously executing a NYLL settlement containing a general release, has not in fact received a limited release."). Accordingly, Plaintiff must address this conflicting case law and provide further legal support as to why the Court should approve the bifurcated releases currently set forth in the Proposed Settlement, or, if the Parties decide to bifurcate the settlements into two separate agreements, why such an approach is permissible.

The Proposed Settlement also contains a "No Re-Employment" clause, prohibiting Plaintiff from applying for employment with "any entity owned or operated by Defendants or any affiliated entities," and agreeing to "wave any claim with regard to . . . denial" of employment by such entities. (Proposed Settlement 5.) "Courts in this Circuit have consistently

9

rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." *Burgos v. Ne. Logistics, Inc.*, No. 15-CV-6840, 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018) (collecting cases), *adopted by* 2018 WL 2376300 (E.D.N.Y. May 24, 2018). Additionally, Plaintiff has provided "not a shred of explanation—and . . . no cases—to justify inclusion of" such a provision. *Nieto v. Izzo Constr. Corp.*, No. 15-CV-6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (denying motion for approval of a settlement agreement that contained a no-reemployment clause). Therefore, the Court will not approve this provision.

Finally, the Court finds that the request for attorneys' fees and costs is excessive, given the work performed by Plaintiff's Counsel and the procedural posture of this Action. Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)). In the Second Circuit, courts may calculate attorneys' fees using one of two methods: the "lodestar" method or the "percentage of the fund" method. *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund." *Kefi*, 2015 WL 4006896, at *3. "Under the lodestar method, 'the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.'" *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015) (footnote omitted) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). "After the computation is done, 'the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors," such as the risk of the litigation and

the performance of the attorneys.'" *Id.* at 590–91 (quoting *Goldberger*, 209 F.3d at 47). "Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel*, 595 F.3d at 417 (some quotation marks omitted). Under either approach, courts draw on the following considerations—commonly known as the "Goldberger factors"—when assessing the reasonableness of attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (alteration and quotation marks omitted).

When requesting attorneys' fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336. Although courts may elect to award fees by either considering the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also

11

determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiff's Counsel seeks an award of $12,066.67, which includes the $400 filing fee to initiate this Action. (El-Hag Letter 2.) This award is approximately 34% of the Settlement Amount. Without the filing fee, the award is approximately one-third of the total recovery. (*Id.*) Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery, and the award requested here is close to this percentage. *See Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016). However, "significantly smaller awards are also common where warranted by the facts of a particular case"; for example, when "settlement has been reached in a relatively short period of time, with little, if any, discovery or motion practice." *Guzman v. Joesons Auto Parts*, No. 11-CV-4543, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases).

Plaintiff's Counsel has submitted records of his time to substantiate this request, (El-Hag Letter Ex. B ("Time Records") (Dkt. No. 35-2)), which he represents are contemporaneous and were generated using a "law practice management software called Clio," (El-Hag Letter 2). Based on Counsel's billing rate of $350/hour and the 15.10 hours expended by Counsel on this case, these records suggest a lodestar sum of $5,285. (El-Hag Letter 2; Time Records 3.) The

amount requested by Plaintiff's Counsel is nearly two and 1/3 times greater than this amount, which is a significant increase.  Although Plaintiff's Counsel cites to several cases holding that a multiplier of two is appropriate in FLSA actions where counsel takes on a matter on a contingent basis, both of these cases involved collective and class actions, and not just a single plaintiff.  *See generally Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV 7264, 2015 WL 539506 (S.D.N.Y. Feb. 10, 2015); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014).  This Action involves a single FLSA plaintiff who settled less than a year after filing the Complaint and after little discovery had taken place, factors that guide against applying a large multiplier.  *See Hdir v. Salon De Quartier*, No. 16-CV-6605, 2017 WL 8950426, at *2–3 (E.D.N.Y. June 21, 2017) (declining to apply a lodestar multiplier in a case involving one FLSA plaintiff who settled after six months and whose counsel performed 10 hours of work); *Guzman*, 2013 WL 2898154, at *2 (finding that it was appropriate to reduce a requested fee from 40% to 25% where the case was a "single-plaintiff FLSA matter" that settled 11 months after it was initiated, and no discovery or motion practice had taken place); *Bricker v. Planet Hollywood N.Y., L.P.*, No. 08-CV-443, 2009 WL 2603149, at *3 (S.D.N.Y. Aug. 13, 2009) (reducing a fee award from one third to one quarter of the settlement amount when a case reached tentative settlement after ten months).  However, the Court also recognizes that performing legal work on a contingency basis does involve risk, for which Plaintiff's Counsel is entitled to "some premium."  *Fujiwara*, 58 F. Supp. 3d at 438–39.  Therefore, the Court finds that an award of 20% of the Settlement Amount, totaling $7,000, is appropriate.  This amount exceeds the lodestar by approximately a third, which the Court finds adequately compensates Counsel for the risk incurred in performing work on a contingency basis, and will also adequately compensate Counsel for any work performed in

revising the Proposed Settlement to comport with this Order.  Should Counsel for Plaintiff submit a revised settlement agreement, this reduced fee award should be included.

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Approval of the Proposed Settlement is denied without prejudice.  The Parties may reapply for approval of a settlement that complies with the Court's determinations in this Order.

SO ORDERED.

Dated:   White Plains, New York
            October 5, 2020

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE